Frank S. Hedin (Bar No. 291289)
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: + 1 (415) 766-3534
Facsimile:  + 1 (415) 402-0058
Email: fhedin@hedinhall.com

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>POSTMATES INC.,<br><br>Defendant. | Case No. 3:19-cv-5619<br><br><u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Richard Rogers, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, the investigation of his counsel, and information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

**NATURE OF ACTION**

1. Plaintiff brings this Class Action Complaint for legal and equitable remedies resulting from the illegal actions of Postmates Inc. ("Postmates" or "Defendant") in sending automated text message advertisements to his cellular

telephone and the cellular telephones of numerous other individuals across the country, in clear violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## JURISDICTION AND VENUE

2. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper in this District because Defendant maintains its corporate headquarters within this District.

## PARTIES

4. Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff is, and at all times mentioned herein was, a resident of Pompano Beach, Florida and a citizen of the State of Florida.

5. Defendant Postmates Inc. is a "person" as defined by 47 U.S.C. § 153(39). Defendant maintains, and at all times mentioned herein maintained, its corporate headquarters in San Francisco, California. Defendant describes itself as a company that "connects customers with local couriers who can deliver anything from any store or restaurant in minutes."[1]

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6. In 1991, faced with a national outcry over the vast proliferation of "robocalls" to the telephones of American consumers, Congress enacted the TCPA to address certain abusive telemarketing practices. The TCPA prohibits any person from, inter alia, using an "automatic telephone dialing system" (or "ATDS"), also

---

[1] "About Postmates," Postmates Inc., *available at* https://postmates.com/about (last accessed July 25, 2019).

known as an "autodialer," to make any call, including send any text message, to a wireless telephone number absent an emergency purpose or the "prior express consent" of the party called or texted. *See* 47 U.S.C. § 227(b)(1).

7. Unsolicited text messages have become especially problematic for consumers in recent years. As the Pew Research Center found, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to users' cell phones."

8. Companies today frequently blast consumers with text-message spam using "Short Message Services" (or "SMS") technology, which allows for the rapid transmission and receipt of massive numbers of short messages to and from wireless telephones. Another technology known as "Multimedia Messaging Services" (or "MMS") is similar to SMS but also permits the inclusion of photos, videos, and other audio-visual content within a text message.

9. Companies deliver SMS and MMS text messages directly to consumers' wireless devices by transmitting the messages to telephone numbers assigned to consumers' devices. Because wireless telephones are carried on their owners' persons, SMS and MMS text messages are immediately received, virtually anywhere in the world, by the consumers to whom they are sent. When an SMS or MMS text message is successfully transmitted, the receiving device notifies its owner that he or she has received a new message by way of an auditory and/or visual alert. Consequently, unsolicited SMS and MMS text messages are distracting and aggravating to recipients and intrude upon their recipients' seclusion on receipt.

10. Text-message spam can also be costly to receive because consumers typically either pay their wireless service providers in advance for the text messages they receive or incur usage allocation deductions to their text messaging or data plans, regardless of whether such messages are authorized.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11. Plaintiff was at all times mentioned herein the subscriber of the cellular telephone number (954) ***-3307 (the "3307 Number"). The 3307 Number was at all times mentioned herein assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

12. On or about April 8, 2019, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, an automated text message offering its "gig economy," courier-connection services to the 3307 Number without Plaintiff's prior express consent or prior express written consent, and without providing Plaintiff a mechanism to stop receiving such messages in the future.

13. Specifically, on or about April 8, 2019, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following automated text message advertisement to the 3307 Number without Plaintiff's express consent, written or otherwise:



14. The unsolicited text message advertisement depicted above was transmitted from the dedicated number (724) 394-0835, which upon information and belief is owned and operated by Defendant or Defendant's agent(s) or affiliate(s).

15. The unsolicited text message depicted above constituted "advertising" or "telemarketing" material within the meaning of the TCPA and its implementing regulations because the message promoted the commercial availability of Defendant's "gig economy"-oriented, courier-connections services, which are performed by "drivers" on an independent contractor basis. Defendant offered such services to Plaintiff to perform in the message depicted above for the purpose of deriving commercial profit from Plaintiff's performance of any such services in response to the message, in the form of service fees that Defendant's third-party clients pay for such services, substantial portions of which are retained by Defendant in the ordinary course of its business. In other words, the message depicted above was sent for the purpose, direct or indirect, of deriving commercial profit from any delivery services that Plaintiff subsequently provides to Defendant, and which Defendant in turn provides to its various third-party clients.

16. The 0835 number used by or on behalf of Defendant to transmit the offending text message to the 3307 Number is leased or owned by Defendant or another entity acting on its behalf and is used by or on behalf of Defendant to operate automated text message and marketing campaigns, and to transmit Defendant's automated text messages in connection with such campaigns, *en masse* and in an automated fashion without human intervention.

17.     Because Plaintiff's cellular phone alerts him whenever he receives a text message, the unsolicited text message advertisement that Defendant sent to Plaintiff invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion when he received it.

18.     All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the 3307 Number occurred via an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

19.     Specifically, the text message advertisements received by Plaintiff, and the other Class members, were sent from an automated dialing device that Defendant used to transmit messages to consumers *en masse* and includes features that make it capable of sending numerous text messages simultaneously and automatically to lists of telephone numbers without human intervention, and has the capacity to store, produce, and then dial such numbers automatically.

20.     And the text messages at issue in this case were actually transmitted to Plaintiff and all other proposed members of the Class in an automated fashion and without human intervention, with hardware and software that stored, produced and dialed random or sequential numbers, and/or that received and stored lists of telephone numbers to be dialed and then dialed such numbers automatically and without human intervention.

21.     Neither Plaintiff, nor the other members of the Class, provided their "prior express consent" or "prior express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant to transmit text message advertisements to the 3307 Number or to any other Class member's number by means of an

"automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A)

22. None of Defendant's text messages to the 3307 Number were sent for an emergency purpose.

23. Plaintiff does not have, and has never had, any sort of business relationship with Defendant or with any of Defendant's agents or affiliates. At no time has Plaintiff ever provided the 3307 Number to Defendant or to any identified agent or affiliate of Defendant.

## CLASS ALLEGATIONS

24. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as:

> All persons in the United States who, at any time between September 6, 2015 and the present, received one or more text message(s) from Postmates, Inc. (or an affiliate, subsidiary, or agent of Postmates, Inc.) and for whom Postmates, Inc. does not have a record of the requisite consent to be sent such text messages.

25. Defendant, its employees, and agents are excluded from the Class.

26. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

27. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

28. This Class Action Complaint seeks injunctive relief and monetary damages.

29. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

30. On application by Plaintiff's counsel for class certification, Plaintiff may also seek certification of subclasses in the interests of manageability, justice, or judicial economy.

31. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

32. <u>Typicality</u>. Plaintiff received at least one automated text message advertisements from Defendant without providing his "prior express consent" or "prior express written consent" to receive such messages from Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members he seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

33. <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

34. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiff's counsel are experienced in handling complex class action claims, in particular claims brought under the TCPA and other consumer protection statutes.

35. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

   a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant sent automated text messages to Plaintiff's and Class members' cellular telephones;

   b) Whether such text messages were sent using an "automatic telephone dialing system";

c) Whether the text messages sent constituted "advertisements" or "telemarketing";

d) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained "express consent" or "prior express written consent" within the meaning of the TCPA to send the text messages complained of, assuming such an affirmative defense is raised; and

e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

36. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of

the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such messages to be sent to their cellular telephones. The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

37.   Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

38.   Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**CLAIM FOR RELIEF**
VIOLATION OF THE TELEPHONE
CONSUMER PROTECTION ACT
(47 U.S.C. § 227)

39. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

40. Plaintiff and each member of the Class received at least one text message from Defendant promoting and advertising the commercial availability of its "gig economy"-oriented courier services, which Defendant sought to enlist Plaintiff and the Class members to perform on its behalf for the purpose of deriving commercial profit in the form of service fees collected from Defendant's third-party clients who use such services. Accordingly, each such text message constituted "advertising" or "telemarketing" material within the meaning of the TCPA and its implementing regulations.

41. Neither Plaintiff nor any other member of the Class provided Defendant prior express written consent (or prior express consent) to receive such text messages.

42. Defendant's unauthorized text messages were sent using an ATDS as evidenced by the generic nature of the text messages, the lack of any ability to stop the messages from continuing, the use of a dedicated long code, and the fact that Plaintiff had never provided his phone number to Defendant or any of its agents, affiliates, or subsidiaries and had no relationship with Defendant.

43. Defendant's use of an automatic telephone dialing system to transmit text messages advertisements to telephone numbers assigned to a cellular telephone service, including to Plaintiff's 3307 Number and the numbers of all members of the proposed Class, absent the requisite "prior express written consent" (or "prior express

consent"), as set forth above, constituted violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(b)(1)(A)(iii).

44. As a result of Defendant's violations of the TCPA, Plaintiff and all Class members are entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA (or $1,500.00 for any such violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

45. Plaintiff and the other Class members seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richard Rogers prays for relief and judgment in favor of himself and the Class as follows:

A. Injunctive relief prohibiting such violations of the TCPA in the future;

B. As a result of each of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each class member statutory damages of $500.00 (or $1,500.00 for any violations committed willfully or knowingly);

C. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

D. An Order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: September 6, 2019

**HEDIN HALL LLP**

By: /s/ Frank S. Hedin
      Frank S. Hedin

Frank S. Hedin (Bar No. 291289)
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: + 1 (415) 766-3534
Facsimile: + 1 (415) 402-0058
Email: fhedin@hedinhall.com

*Counsel for Plaintiff and the Putative Class*