UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ROGERS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>POSTMATES INC.,<br><br>　　　　　Defendant. | Case No. 19-cv-05619-TSH<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 26 |

## I.　INTRODUCTION

Plaintiff Richard Rogers brought this action under the Telephone Consumer Protection Act after receiving an unsolicited text message on his cellular phone with a hyperlink directing him to a job board on Postmates' website. Pending before the Court is Defendant Postmates' Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). ECF No. 26. Plaintiff filed an Opposition (ECF No. 30) and Defendant filed a Reply (ECF No. 31). The Court finds this matter suitable for disposition without oral argument and **VACATES** the March 5, 2020 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's motion for the following reasons.

## II.　BACKGROUND

Rogers initiated this putative class action against Postmates on September 6, 2019. Postmates operates a for-profit mobile app "Urban Logistics platform [which] connects customers with local couriers who can deliver anything from any store or restaurant in minutes." https://postmates.com/about (last visited February 26, 2020). Rogers alleges that on or about April 8, 2019, he received the following unsolicited text from the dedicated number (724) 394-0835:

[Image: Screenshot of text message from +1 (724) 394-0835, Mon, Apr 8, 6:19 PM: "Richard, PostMates needs you. Make 25 hourly delivering in Fort Lauderdale. http://delivrpublic.us/35ecb24c. Reply stop to cancel."]

First Amend. Class Action Compl. ("FAC") ¶¶ 12, 13. Rogers alleges that at the time he received the message, the hyperlink in the message (http://delivrpublic.us/35ecb24c) directed him to the following URL when accessed[1], *id.* ¶ 14:

https://fleet.postmates.com/?utm_source=birddogmedia&utm_medium=jobboard&utm_campaign=Birddogmedia_Supply_JB_Postings_nj_Desktop_CPL_All_All_Core&city_id=54&z=08854&utm_term=588582319&utm_content=. The URL is a web address for a Postmates job board entitled "Deliver with Postmates."[2]

Rogers FAC alleges a single count against Postmates, a violation of the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227. Rogers brings this action on behalf of a putative class of:

> All persons in the United States:
>
> (1) who, at any time between September 6, 2015 and the present, were sent at least one text message to a number assigned to a cellular telephone service by Postmates, Inc., either directly or indirectly by one or more intermediary or intermediaries acting as its agent(s) or sub-agent(s), that contained a hyperlink which, if accessed, would have redirected to a URL that included (inter alia) the following text in its address: "postmates.com/?utm_source=birddogmedia";
>
> and
>
> (2) for whom Postmates, Inc. lacks any record of such recipient, prior

---

[1] The hyperlink does not now direct to a functioning webpage.
[2] The FAC references the URL but does not reference material found on the webpage for the URL. "A court may, however, consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment. . . . Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

2

> to being sent such text message, having provided to Postmates, Inc. (or to any agent or sub-agent of Postmates, Inc. disclosed to such person as being affiliated with Postmates, Inc.) the telephone number to which such message was sent.

*Id.* ¶ 31. Postmates now moves to dismiss the FAC.

### III. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted); Fed. R. Civ. P. 8(a)(2) (A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). In considering a motion to dismiss, a court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, a "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

The TCPA makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call . . . using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). An ATDS is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers." § 227(a)(1). To properly plead a TCPA claim, a plaintiff must allege that (1) the defendant called or texted a cellular telephone number; (2) using an ATDS; (3) without the recipient's prior express consent. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("[A] text message is a 'call' within the TCPA.").

Postmates argues that Rogers FAC fails because he has failed to plausibly plead that Postmates is directly or vicariously liable for the alleged violation of the TCPA. The Court agrees.

### A. Direct Liability

"To 'make' a call under the TCPA," and thus become liable, "the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019) (citing *Gomez v. Campbell-Ewald, Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)). Rogers has made only a conclusory allegation that Postmates was directly involved in transmitting the April 8, 2019 text to him, and even then, he alleges that Postmates "by itself or through an intermediary or intermediaries" "transmitted or caused to be transmitted" the message. FAC ¶ 12; *see also id.* ¶ 13 (the number from which the text message was sent "is owned and operated by Defendant or by one or more agent(s) or subagent(s) on its behalf"). But no facts he has alleged support a plausible inference that Postmates itself sent the text. Indeed, Rogers seems to concede as much in his Response. He

4

explains, "Plaintiff received one of the text messages at issue as part of a marketing campaign *conducted on Defendant's behalf by its agent Bird Dog. As explained above, Bird Dog was acting* pursuant to the Defendant's 'control and direction' in promoting its courier service . . . ." Resp. 4 (emphasis added), ECF No. 30. And indeed, the URL to which Rogers was directed has "birddogmedia" as an Urchin Tracking Module ("UTM") source, and "birddogmedia_supply_JB_Postings" as a UTM campaign, which suggests that Bird Dog Media— whatever that entity is—was directing things.

Thus, the FAC fails to plausibly allege that Postmates directly sent or was involved in transmitting the text to Rogers.

## B. Vicarious Liability

Since Rogers' FAC alleges no facts giving rise to a plausible inference that Postmates directly sent the text at issue, his complaint rises or falls depending on whether it plausibly alleges that Postmates had an agency relationship with the person or entity who did. If it does not, Rogers has no viable claim under a theory of vicarious liability.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act." *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2008) (discussing agency in the context of a TCPA lawsuit) (quoting *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) Of Agency (the "Restatement") § 1.01 (Am. Law Inst. 2006))). "For an agency relationship to exist, *an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent*.'" *Mavrix*, 873 F.3d at 1054 (emphasis added) (quoting Restatement § 1.01 cmt. c).

Rogers FAC does not clearly allege what relationship, if any, he believes the sender of the text had with Postmates. For example, he alleges that "Defendant, either directly or through one or more agent(s) or sub-agent(s) acting on its behalf and pursuant to its control and direction, retained Bird Dog Media, LLC and/or one or more other such agent(s) or sub-agent(s) to acquire, receive, and store lists of telephone numbers to be dialed on Defendant's behalf[.]" FAC ¶ 17.

And he alleges that, "Defendant, either directly or through one or more intermediaries acting as its agent(s) or sub-agent(s), including Bird Dog Media, LLC, utilized an [ATDS] to transmit the subject text . . . ." *Id.* ¶ 24. Those sorts of nebulous allegations do not support a plausible inference that Postmates exercised any control over the sender of the text necessary to establish an agency relationship.[3] *See Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *6 (N.D. Cal. Mar. 20, 2019) ("Lacking, however, are sufficient factual allegations to plead that Youngevity exercised control over the specific contents of the March 15 call advertising DAC. Even if Canary had alleged such facts, control over the content of an advertising call, without more, is insufficient to plead vicarious liability."); *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *7 (S.D. Cal. Jan. 22, 2019) ("The FAC does not meet these pleading standards, instead offering confusing allegations regarding the role each of the defendants played in the purported scheme, often using defendants' names interchangeably and switching the theory of control. . . . Such allegations are insufficient to establish vicarious liability. Plaintiff has failed to plead any facts in support of his conclusory allegations that Encor exercised any control over the other defendants allegedly making the calls to Ewing to establish an agency relationship between them and Encor."); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ("To succeed on this [TCPA] vicarious liability theory, Ms. Thomas must demonstrate that these entities acted as an agent of Taco Bell: that Taco Bell controlled or had the right to control them and, more specifically, the manner and means of the text message campaign they conducted.") (citing *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010). They amount to mere speculation, and "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility . . . .") (citation omitted).

In his Response, Rogers directs the Court to a 2013 FCC Ruling finding that "vicarious

---

[3] Even if Postmates had hired Bird Dog Media to advertise on its behalf, there are no factual allegations in the FAC plausibly suggesting Postmates hired the sender of the text to do its biding or controlled it. An allegation that Postmates hired Bird Dog Media would at best suggest the sender of the text was one layer removed from Postmates and its control.

6

seller liability under federal common law agency principles is also available for violations of section 227(b)." *In re DISH Network, LLC*, 28 FCC Rcd 6574, 6592. In that Ruling, the FCC provided "examples of evidence that may demonstrate that [a third party] is the seller's authorized representative with apparent authority to make the seller vicariously liable for the [third party's] section 227(b) violations." But the FAC does not plausibly allege any of those circumstances are present here. For instance, Rogers points to the FCC's finding that, "apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information." *Id.* at 6592. But Rogers has alleged no facts plausibly suggesting that the sender of the text had access to any information or systems exclusively within Postmates' control (in fact, his FAC doesn't even make conclusory allegations to that effect). In his Response, he points out that the text contained information about an hourly pay rate ("Make 25 hourly") and a specific geographic area ("delivery in Fort Lauderdale"), but that type of information can easily be found, or simply made up. One needs only download and open the Postmates app to discern whether it delivers in a specific area and thus might be hiring drivers. And the Postmates website allows anyone to search restaurants at locations Postmates serves (Ft. Lauderdale shows up as one of them). *See* https://postmates.com/delivery-near-me (last visited February 26, 2020). Nor is the fact that the link in the text directed to the Postmates website proof that the sender had access to Postmates' "information and systems." A quick internet search or scroll to the bottom of Postmates homepage can take a would-be fleet member to the relevant webpage.

Returning to the FCC ruling, Rogers notes that the FCC stated that "authority to use the seller's trade name, trademark and service mark may also be relevant" in determining whether a third-party had apparent authority. *Id.* at 6592. But Rogers' FAC contains no factual allegations plausibly suggesting that the sender of the text was given authority by Postmates to use Postmates' name.

Finally, Rogers points out that the FCC found that, "a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized

7

to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *Id.*; *see also* Restatement § 4.01 ("[K]nowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction."). Rogers cites the FCC's finding but omits from it the language "for the unauthorized conduct *of a third-party telemarketer that is otherwise authorized to market on the seller's behalf*;" and for good reason: the FAC contains no factual allegations raising a plausible inference that the sender of the text was authorized by Postmates to market on its behalf. Additionally, even if the sender was authorized to market on Postmates' behalf, there are no factual allegations suggesting that Postmates knew or reasonably should have known that the sender of the text or any of its agents or sub-agents were violating the TCPA on its behalf. Rogers argues that, "the website link incorporated within the text message sent on Postmates behalf directed recipients directly to Postmates' website, such that Postmates would have been aware of where visitors to its website were being directed from and that they were mobile telephone users." Resp. at 6. "In that same thread," Rogers argues, "Postmates accepted the benefit from these text messages" and thus ratified the sender's conduct. However, Rogers pleads no factual allegations to buttress that conclusion. The Postmates' webpage at issue can be found and accessed by a very basic navigation of Postmates' website, such that anyone with access to the internet can reach the webpage with relative ease. There's no allegation that Postmates examined tracking codes and would have been aware of which particular applicants were directed to its website by whoever sent Rogers his text (if in fact there were any, which Rogers has also not alleged). Lastly, Rogers alleges that Defendant "had actual or constructive knowledge" that class members' phone numbers were acquired without notice that they would be sent autodialed text messages. But that allegation is not supported by factual allegations, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. And a principal only ratifies the action of an agent if it *knowingly* accepts the benefits of the transaction. *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 WL 3707283, at *4 (N.D. Cal. Aug. 3, 2018) (citing Restatement § 4.01 cmt. d ("knowing acceptance of the benefit of a transaction ratifies the act of

8

entering into the transaction")); *W. All. Bank v. Jefferson*, 2015 WL 7075171, at *7 (D. Ariz. Nov. 13, 2015), *aff'd*, 698 F. App'x 914 (9th Cir. 2017) (citing the Restatement § 4.01 cmt. b ("The principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.")). Thus, Rogers has not plausibly alleged that Postmates ratified the sender's actions.

Rogers relies on *Shuckett v. DialAmerica Mktg. Inc.*, 2019 WL 913174 (S.D. Cal. Feb. 22, 2019), but that case is not on point. There, the court concluded that the plaintiff had plausibly alleged that the company for whom a third-party had made telemarketing calls exerted some degree of control over the third party. *Id.* at * 3-4. But there, the company had a contract with the third party. Here, there isn't any clear allegation that Postmates had an agreement with the sender of the text. Instead, Rogers alleges that Postmates, "either directly *or through one or more agent(s) or sub-agent(s)* acting on its behalf . . . retained Bird Dog Media, LLC and/*or one or more other such agent(s) or sub-agent(s)* . . . ." FAC ¶ 17 (emphasis added). This is not enough to plausibly allege that Postmates was vicariously liable.

Nor is *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) of much use to Rogers. Rogers argues that the court there "found that evidence of many of the same allegations that Plaintiff raises here was sufficient to overcome a motion for summary judgment on the issue of the defendant's liability for text messages sent on its behalf." Resp. 7 (citing *id.* at 5). But as Rogers himself acknowledges, that order concerned cross-motions for summary judgment, not a motion to dismiss, and there the plaintiffs had produced evidence "that [the defendant] knew of [its third party's] allegedly illegal telemarketing conduct and accepted the benefits therefrom." 2018 WL 3707283, at * 5. The court found that the plaintiffs had thus "presented evidence, which when viewed in a light most favorable to their case, suggests that a reasonable jury may return a verdict finding that [defendant] is vicariously liable for the telemarketing calls at issue based on a ratification theory." *Id.* Rogers has not produced evidence that Postmates knew or reasonably should have known of any conduct by the sender of the text which violated the TCPA. Of course, he is not required to at this stage, but nor can he make it through a challenge to the pleadings armed with nothing more than conclusory allegations and

9

speculation. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

The Court finds dismissal is appropriate.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss and dismisses with leave to amend Plaintiff's First Amended Class Action Complaint.

**IT IS SO ORDERED.**

Dated: March 3, 2020

THOMAS S. HIXSON
United States Magistrate Judge