Frank S. Hedin (Bar No. 291289)
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: + 1 (415) 766-3534
Facsimile:  + 1 (415) 402-0058
Email: fhedin@hedinhall.com

Eugene Y. Turin (*pro hac vice*)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Il 60604
Telephone: + 1 (312) 893-7002
Email: eturin@mcgpc.com

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>POSTMATES INC.,<br><br>    Defendant. | Case No. 3:19-cv-5619<br><br>CLASS ACTION<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Richard Rogers, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to himself, the investigation of his counsel, and information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1. Plaintiff brings this Second Amended Class Action Complaint for legal and equitable remedies resulting from the illegal actions of Postmates Inc. ("Postmates" or "Defendant") in sending automated text message advertisements to his cellular telephone and the cellular telephones of numerous other individuals across the country, in clear violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## JURISDICTION AND VENUE

2. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper in this District because Defendant maintains its corporate headquarters within this District.

## PARTIES

4. Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff is, and at all times mentioned herein was, a resident of Pompano Beach, Florida and a citizen of the State of Florida.

5. Defendant Postmates Inc. is a "person" as defined by 47 U.S.C. § 153(39). Defendant maintains, and at all times mentioned herein maintained, its corporate headquarters in San Francisco, California. Defendant describes itself as a company that "connects customers with local couriers who can deliver anything from any store or restaurant in minutes."[1]

---

[1] "About Postmates," Postmates Inc., *available at* https://postmates.com/about (last accessed July 25, 2019).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6. In 1991, faced with a national outcry over the vast proliferation of "robocalls" to the telephones of American consumers, Congress enacted the TCPA to address certain abusive telemarketing practices. The TCPA prohibits any person from, inter alia, using an "automatic telephone dialing system" (or "ATDS"), also known as an "autodialer," to make any call, including send any text message, to a wireless telephone number absent an emergency purpose or the "prior express consent" of the party called or texted. *See* 47 U.S.C. § 227(b)(1).

7. Unsolicited text messages have become especially problematic for consumers in recent years. As the Pew Research Center found, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to users' cell phones."

8. Companies today frequently blast consumers with text-message spam using "Short Message Services" (or "SMS") technology, which allows for the rapid transmission and receipt of massive numbers of short messages to and from wireless telephones. Another technology known as "Multimedia Messaging Services" (or "MMS") is similar to SMS but also permits the inclusion of photos, videos, and other audio-visual content within a text message.

9. Companies deliver SMS and MMS text messages directly to consumers' wireless devices by transmitting the messages to telephone numbers assigned to consumers' devices. Because wireless telephones are carried on their owners' persons, SMS and MMS text messages are immediately received, virtually anywhere in the world, by the consumers to whom they are sent. When an SMS or MMS text

message is successfully transmitted, the receiving device notifies its owner that he or she has received a new message by way of an auditory and/or visual alert. Consequently, unsolicited SMS and MMS text messages are distracting and aggravating to recipients and intrude upon their recipients' seclusion on receipt.

10. Text-message spam can also be costly to receive because consumers typically either pay their wireless service providers in advance for the text messages they receive or incur usage allocation deductions to their text messaging or data plans, regardless of whether such messages are authorized.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11. Defendant operates a mobile application that connects its customers to thousands of delivery drivers that are signed-up in its network to provide deliveries of food, groceries, and other items.

12. In an effort to advertise its delivery service and encourage Plaintiff and the other members of the putative Class to sign-up to become a part of its driver network to provide food deliveries, Defendant contracted with Bird Dog Media, LLC ("Bird Dog"), one of its marketing agents, to promote its mobile application and driver opportunities to as many individuals as possible.

13. As part of these efforts, Bird Dog blasted several thousands if not millions of automated text messages encouraging individuals to sign up for Defendant's delivery-driver network.

14. For example, on or about April 8, 2019, Bird Dog Media transmitted the following automated text message on behalf of Defendant and advertising its delivery platform to Plaintiff's cellular telephone number:



15. The unsolicited text message advertisement depicted above was transmitted from the dedicated number (724) 394-0835, which is owned and operated by Bird Dog and used to transmit text message advertisements on behalf of Defendant and for Defendant's benefit.

16. The hyperlink in the automated message sent to Plaintiff – http://delivrpublic.us/35ecb24c (which was substantially similar to the hyperlinks in the text messages sent to the other members of the class) – directed receipients to the following URL, which was a web page owned, operated, and maintained by Defendant: https://fleet.postmates.com/?utm_source=birddogmedia&utm_medium=jobboard&utm_campaign=Birddogmedia_Supply_JB_Postings_nj_Desktop_CPL_All_All_Core&city_id=54&z=08854&utm_term=588582319&utm_content=.

17. The webpage operated by Defendant was specifically created for the purposes of the marketing campaign it contracted with and paid Bird Dog to conduct, and Defendant was at all times made aware that individuals, including Plaintiff and

the other members of the Class, were directed to its website and its services pursuant to this marketing campaign and as a result of text messages sent by Bird Dog on its behalf.

18. Indeed, Defendant specifically oversaw, monitored, tracked, and realized and appreciated the results of the marketing campaigns that it had hired Bird Dog to perform on its behalf, including by way of codes embedded within the postmates.com URLs to which the recipients of these text messages were directed via the hyperlinks within them, one example of which is identified in paragraph 16 above (the URL to which the hyperlink in the subject text message sent to Plaintiff directed, which specifically identified "Birddogmedia" – which is a reference to Bird Dog – as the "source" of the lead who arrives at the destination postmates.com webpage after having clicked that hyperlink, and which also contained other alphanumerical tracking codes used by Defendant and Bird Dog for purposes of tracking the sources of such leads and the means by which the leads have been directed to Defendant's website). Moreover, Plaintiff is informed and believes, and thereupon alleges, that Defendant possessed, for the entire duration of its contractual relationship with Bird Dog, including at the time the subject text messages were sent to Plaintiff and the other members of the Class, and Defendant continues to possess today, information in its marketing databases and other technology platforms reflecting a hyperlink in an SMS or MMS text message, sent by Bird Dog pursuant to its contractual relationship with the company to provide such marketing services, as the originating source of any visitor who arrived at its postmates.com website as a result of clicking a hyperlink in a text message sent by Bird Dog on its behalf.

19. The unsolicited text message depicted above constituted "advertising" or "telemarketing" material within the meaning of the TCPA and its implementing regulations because the message promoted Defendant's mobile application based delivery-driver network and Defendant offered for Plaintiff to perform the services promoted in the above text message for the purpose of deriving commercial profit from any delivery services that Plaintiff and the other Class members would provide on behalf of Defendant.

20. In sending the automated text messages at issues, Bird Dog was at all times acting on behalf of Defendant and solely for Defendant's benefit pursuant to a marketing campaign that Defendant had authorized, contracted with Bird Dog for, and paid Bird Dog to conduct. Defendant was aware, or should have been aware, that Bird Dog was sending such text messages on its behalf, and Defendant knowingly allowed and permitted Bird Dog to conduct such marketing at least until the time that Plaintiff filed this suit.

21. The text messages transmitted on behalf of Defendant to the cellular telephones of Plaintiff and the other Class members were sent via an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A) as: the messages were sent from telephone numbers used to message consumers en masse; the messages featured automatically prepared content using computer-generated templates into which the city and name of the recipient was inputted so as to make the messages appear as though they were sent from a real human being but were in fact automated in every sense; the dialing equipment used to send the messages had features substantially similar to a predictive dialer, inasmuch as it was capable of

making numerous calls or texts simultaneously (all without human intervention) and had the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers and then dial such numbers, en masse, in an automated fashion and without human intervention.

22. And indeed, the text messages at issue in this case were transmitted on behalf of Defendant and for Defendant's benefit to Plaintiff and all other putative Class members with hardware and software that received and stored lists of telephone numbers, and then dialed such numbers, *en masse*, in an automated fashion and without human intervention.

23. Neither Plaintiff, nor the other members of the Class, provided their "prior express consent" much lesss any "written" consent to Defendant or Bird Dog to receive the subject text messages concerning Postmates by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A) on their cellular telephone.

24. Because Plaintiff's cellular phone, like the cellular telephones of the other members of the Class, alerts him whenever he receives a text message, the subject text messages sent on behalf of Defendant invaded Plaintiff's and the other Class members' privacy and intruded upon their seclusion when they received them.

25. None of the subject text messages sent to Plaintiff or to any other Class member's number were sent for an emergency purpose.

## CLASS ALLEGATIONS

26. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of himself individually and on behalf of all other similarly situated persons as a class

action pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as:

> All persons in the United States:
>
> (1) who, at any time between September 6, 2015 and the present, were sent at least one text message to a number assigned to a cellular telephone service that contained a hyperlink which, if accessed, would have redirected to a URL that included (inter alia) the following text in its address: "postmates.com/?utm_source=birddogmedia";
>
> and
>
> (2) for whom Postmates, Inc. and Bird Dog Media, LLC lack any record of such recipient, prior to being sent such text message, having provided to Postmates, Inc. or Bird Dog Media, LLC (as a disclosed agent of Postmates, Inc.) the telephone number to which such message was sent.

27. Defendant, its employees, and agents are excluded from the Class.

28. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

29. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant.

30. This Class Action Complaint seeks injunctive relief and monetary damages.

31. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

32.     On application by Plaintiff's counsel for class certification, Plaintiff may also seek certification of subclasses in the interests of manageability, justice, or judicial economy.

33.     <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

34.     <u>Typicality</u>. Plaintiff received at least one automated text message sent on behalf of Defendant to a number assigned to a cellular telephone service. Such text message contained a hyperlink which, if accessed, would have redirected to a URL that included (inter alia) the following text in its address: "postmates.com/?utm_source=birddogmedia." Prior to being sent such text message, Plaintiff had not provided his cellular telephone number to Defendant or to Bird Dog, and therefore did not provide his "prior express consent" or "prior express written consent" within the meaning of the TCPA to receive such message.  Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members he seeks to represent.  Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

35. <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

36. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiff's counsel are experienced in handling complex class action claims, in particular claims brought under the TCPA and other consumer protection statutes.

37. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

   a) Whether Defendant may be held liable for the subject text messages sent by Bird Dog on its behalf and pursuant to a marketing campaign it directed Bird Dog to conduct;

   b) Whether the subject text messages were delivered using an "automatic telephone dialing system";

  c) Whether the subject text messages constituted "advertisements" or "telemarketing";

  d) Whether Defendant can meet its burden to demonstrate that it obtained either the requisite "express consent" or "prior express written consent" (depending on resolution of the question above in section (c)) to make or initiate the transmission of the subject text messages, assuming such an affirmative defense is raised by Defendant; and

  e) Whether Defendant should be enjoined from engaging in such conduct in the future.

38. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system by causing multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of

the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and the Class members, by definition, did not provide prior express consent (much less prior express written consent) as required under the statute to authorize the subject text messages to be sent to their cellular telephones.  The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of Defendant's agent(s) or sub-agent(s) or of cellular telephone providers.

39.  Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests.  The prosecution of individual actions by Class members could establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

40.  Defendant, through its agent Bird Dog, has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.  Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**CLAIM FOR RELIEF**
VIOLATION OF THE TELEPHONE
CONSUMER PROTECTION ACT
(47 U.S.C. § 227)

41. Plaintiff incorporates by reference the foregoing paragraphs of this Second Amended Class Action Complaint as if fully stated herein.

42. Plaintiff and each Class member received at least one automated text message sent by Bird Dog on behalf of Defendant to a number assigned to a cellular telephone service. All such text messages contained a hyperlink which, if accessed, would have redirected to a URL that included (inter alia) the following text in its address: "postmates.com/?utm_source=birddogmedia." Prior to being sent such text messages, neither Plaintiff nor any other Class member had provided the cellular telephone number to which such message(s) were sent to Defendant or to Bird Dog. Consequently, neither Plaintiff nor any other Class member provided his or her "prior express consent" or "prior express written consent" (to the extent such messages are deemed advertisements or telemarketing messages) within the meaning of the TCPA to Defendant or Bird Dog to authorize the transmission of the subject text messages.

43. All of the subject text messages sent to Plaintiff and to the members of the Class were initiated or made using the same dialing equipment technology, which constitutes an "automatic telephone dialing system" within the meaning of the TCPA.

44. By having Bird Dog transmit the subject text messages using an "automatic telephone dialing system" to telephone numbers assigned to a cellular telephone service on its behalf and for its benefit, as alleged herein, Defendant violated the TCPA, including but not limited to 47 U.S.C. § 227(b)(1)(A)(iii).

45. As a result of Defendant's violations of the TCPA, Plaintiff and all Class members are each entitled to, and do seek, an award of $500.00 in statutory damages for each violation of the TCPA (or $1,500.00 for each such violation committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

46. Plaintiff and the other Class members seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richard Rogers prays for relief and judgment in favor of himself and the Class as follows:

A. Injunctive relief prohibiting such violations of the TCPA in the future;

B. As a result of each of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each class member statutory damages of $500.00 (or $1,500.00 for any violations committed willfully or knowingly);

C. An award of attorneys' fees and costs to counsel for Plaintiff and the Class, paid from the amount of any statutory damages award to the Class authorized by the TCPA, pursuant to Rule 23; and

D. An Order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: April 2, 2020   **HEDIN HALL LLP**

By: /s/ Frank S. Hedin
Frank S. Hedin

Frank S. Hedin (Bar No. 291289)
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: + 1 (415) 766-3534
Facsimile: + 1 (415) 402-0058
Email: fhedin@hedinhall.com

Eugene Y. Turin (*pro hac vice*)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Il 60604
Telephone: + 1 (312) 893-7002
Email: eturin@mcgpc.com

*Counsel for Plaintiff and the Putative Class*