UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD ROGERS,<br><br>        Plaintiff,<br><br>    v.<br><br>POSTMATES INC.,<br><br>        Defendant. | Case No. 19-cv-05619-TSH<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 36 |

## I.    INTRODUCTION

Plaintiff Richard Rogers brought this putative class action under the Telephone Consumer Protection Act ("TCPA") after receiving an unsolicited text message on his cellular phone with a hyperlink directing him to a job board on Defendant Postmates, Inc.'s website. Pending before the Court is Postmates' Motion to Dismiss Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 36. Plaintiff filed an Opposition, ECF No. 38, and Defendant filed a Reply, ECF No. 39. The Court finds this matter suitable for disposition without oral argument and **VACATES** the July 16, 2020 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendant's motion for the following reasons.

## II.    BACKGROUND

Rogers is a resident of the State of Florida. Sec. Amend. Class Action Compl. ("SAC") ¶ 4. Postmates, a corporation headquartered in San Francisco, operates a mobile application "Urban Logistics platform" that connects its customers to thousands of delivery drivers who are signed-up in its network to provide deliveries of food, groceries, and other items. *Id.* ¶ 5 (quoting "About Postmates," Postmates Inc., *available at* https://postmates.com/about (last accessed July 6, 2020));

SAC ¶ 11.  The SAC alleges that "in an effort to advertise its delivery service and encourage [Rogers] and other class members to sign-up to become delivery drivers, Postmates contracted with Bird Dog Media, LLC [], one of its marketing agents, to promote its mobile application and driver opportunities to as many individuals as possible."  *Id.* ¶ 12.  As part of these efforts, Bird Dog sent thousands of text messages to individuals encouraging them to sign up for Postmates' delivery-driver network.  *Id.* ¶ 13.

On or about April 8, 2019, Bird Dog sent the following automated text message ("text") to Rogers' cellular telephone number:



*Id.* ¶ 14.  Rogers alleges that the text was sent on Postmates' behalf, that the dedicated number, (724) 394-0835, is owned and operated by Bird Dog and is regularly used to transmit text advertisements on Postmates' behalf and for Postmates' benefit.  *Id.* ¶¶ 14, 15.  According to Rogers, the hyperlink in the text (http://delivrpublic.us/35ecb24c) directed recipients to the following URL, which was a webpage owned, operated, and maintained by Postmates: https://fleet.postmates.com/?utm_source=birddogmedia&utm_medium=jobboard&utm_campaign =Birddogmedia_Supply_JB_Postings_nj_Desktop_CPL_All_All_Core&city_id=54&z=08854&utm_term=588582319&utm_content=.  *Id.* ¶ 16.  Rogers alleges that this webpage was specifically created for the purposes of the Bird Dog marketing campaign, and that Postmates was aware that individuals were directed to the webpage and its services pursuant to this marketing campaign and as a result of text messages sent by Bird Dog.  *Id.* ¶ 17.  Rogers asserts that Postmates "specifically oversaw, monitored, tracked, [] realized and appreciated the results" of Bird Dog's marketing campaign, including through use of campaign parameters embedded within the URLs to

which individuals were directed by Bird Dog's texts.  *See id.* ¶ 18 (noting that the source parameter in the URLs specifically identified "birddogmedia" as the source of the traffic).  Rogers contends that Postmates has information in its possession reflecting that the hyperlink contained in Bird Dog's texts to individuals originated traffic to Postmates' website as a result of individuals clicking the hyperlink.  *Id.*

According to Rogers, Bird Dog's text constituted "advertising" and "telemarketing" material within the meaning of the TCPA and its implementing regulations because the text promoted Postmates' delivery-driver network, and Postmates offered for Rogers to perform the services promoted in the text for the purpose of deriving commercial profit.  *Id.* ¶ 19.  Bird Dog, Rogers contends, was at all times acting on behalf of Postmates pursuant to a marketing campaign that Postmates authorized, contracted for with Bird Dog, and paid Bird Dog to conduct.  *Id.* ¶ 20.  For its part, Postmates "was aware, or should have been aware, that Bird Dog was sending such text messages on its behalf, and [] knowingly allowed and permitted Bird Dog to conduct such marketing at least until the time that [Rogers] filed [] suit."  *Id.*

Rogers asserts one claim for relief, a violation of the TCPA, 47 U.S.C. § 227.  He seeks to represent a class of:

> All persons in the United States:
>
> (1) who, at any time between September 6, 2015 and the present, were sent at least one text message to a number assigned to a cellular telephone service that contained a hyperlink which, if accessed, would have redirected to a URL that included (inter alia) the following text in its address: "postmates.com/?utm_source=birddogmedia";
>
> and
>
> 2) for whom Postmates, Inc. and Bird Dog Media, LLC lack any record of such recipient, prior to being sent such text message, having provided to Postmates, Inc. or Bird Dog Media, LLC (as a disclosed agent of Postmates, Inc.) the telephone number to which such message was sent.

*Id.* ¶ 26.  According to Rogers, neither he nor any other Class member provided express consent to Postmates or Bird Dog to send the subject texts, *id.* ¶ 42, and all the texts were sent using an automatic telephone dialing system, within the meaning of the TCPA, *id.* ¶ 43.

3

1     In its Motion to Dismiss ("MTD"), Postmates does not challenge that the text constituted a communication in violation of the TCPA. Instead, it argues that Rogers fails to allege facts sufficient to show that Postmates is vicariously liable for Bird Dog violating the TCPA.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may seek dismissal of a suit for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 687. In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 892-93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)).

### IV.   DISCUSSION

The TCPA makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call . . . using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice to any

4

telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).  An ATDS is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers." *Id.* § 227(a)(1).  To properly plead a TCPA claim, a plaintiff must allege that (1) the defendant called or text messaged a cellular telephone number; (2) using an ATDS; (3) without the recipient's prior express consent. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("[A] text message is a 'call' within the TCPA.").

There are two potential theories of liability under the TCPA: (1) direct liability; and (2) vicarious liability. *Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014).  Direct liability is inapplicable here as the parties do not dispute that the actual sender of the text was not Postmates, but Bird Dog, a third party. *See id.*  Thus, for Rogers' SAC to survive dismissal, he has to have alleged facts plausibly suggesting that Postmates was vicariously liable for the messages sent by Bird Dog. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014) ("Although [defendant] did not send any text messages, it might be vicariously liable for the messages sent by [a third party].").  "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship . . . between the defendant and a third-party caller." *Id.* at 879.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act." *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2008) (discussing agency in the context of a TCPA lawsuit) (quoting *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) Of Agency § 1.01 (Am. Law Inst. 2006) (the "Restatement"))). "For an agency relationship to exist, *an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent*.'" *Mavrix*, 873 F.3d at 1054 (emphasis added) (quoting Restatement § 1.01 cmt. c). "In

5

1  determining whether vicarious liability may be imposed, the extent of control exercised by the
2  principal is the essential ingredient." *Jones*, 887 F.3d 443 at 450 (citation and internal quotation
3  marks omitted).
4      "A plaintiff can establish an agency relationship, and therefore vicarious liability under the
5  TCPA, using the 'bedrock theories of agency,' actual authority, apparent authority, and
6  ratification." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 WL 3707283, at *3 (N.D.
7  Cal. Aug. 3, 2018) (citing *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *In
8  re Joint Petition filed by Dish Network*, LLC 28 FCC Rcd. 6574, 6586-87 (2013)).  The Court will
9  discuss each of these in turn.

### 1. Actual Authority

11  Actual authority may be express or implied.  Express actual authority derives from an act
12  specifically mentioned to be done in a written or oral communication.  *NLRB v. Dist. Council of
13  Iron Workers*, 124 F.3d 1094, 1098 (9th Cir. 1997) ("*Iron Workers*") (citing *Hawaiian Paradise
14  Park Corp. v. Friendly Broadcasting Co.,* 414 F.2d 750, 755 (9th Cir. 1969)).  "Implied actual
15  authority comes from a general statement of what the agent is supposed to do; an agent is said to
16  have the implied authority to do acts consistent with that direction." *Id.* at 1098 (citing *Hawaiian
17  Paradise Park*, 414 F.2d at 755).
18  Here, Rogers does not allege that Postmates exercised the control over Bird Dog necessary
19  to establish Bird Dog as Postmates' agent.  Rogers alleges that Postmates contracted with Bird
20  Dog "to promote its mobile application and driver opportunities to as many individuals as
21  possible" through a marketing campaign.  SAC ¶ 12.  He also alleges that Postmates "specifically
22  oversaw, monitored, tracked, and realized and appreciated the *results* of" the campaign.  *Id.* ¶ 18
23  (emphasis added).  However, he alleges that it was Bird Dog that "conducted" and "performed"
24  the campaign.  *Id.* ¶ 17, 20.  And he does not dispute that Bird Dog was the party who sent the
25  text.  *Id.* ¶¶ 17, 18.  Absent from the SAC are allegations that Postmates exercised any control
26  over the "manner and means" in which Bird Dog executed the campaign on its behalf (the SAC in
27  fact makes no allegations of "control").  A plaintiff must allege facts which, if true, would show
28  that a defendant had the right to control the caller and the manner and means of the calls made.

*Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017 (citing *Thomas*, 583 Fed. Appx at 679-80). There are no allegations here that Postmates directed Bird Dog to send text messages as part of the marketing campaigns; that it dictated the content of any message or other communication sent by Bird Dog; that it identified or otherwise controlled to whom or how or when Bird Dog sent such communications; that it equipped Bird Dog with any technological capability or other insider information necessary for executing the marketing campaign; or even that it "controlled" or "directed" Bird Dog in any way. There is no allegation that Postmates communicated to Bird Dog that text messages could or should be part of the marketing campaign. The most substantive allegation concerning the contours of the relationship between Postmates and Bird Dog is the allegation that Postmates contracted with Bird Dog, but "[a]n allegation of a beneficial contractual relationship alone is insufficient to establish agency." *Trenz v. Sirius XM Radio, Inc.,* 2015 U.S. Dist. LEXIS 180811, *6 (citing *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003) (noting that defendant's receipt of a financial benefit from provided customer information was insufficient to establish ratification), *superseded by statute on other grounds as stated by Breazeale v. Victim Servs.*, 878 F.3d 759, 766-67 (9th Cir. 2017); *Chemtool Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) ("While an agency relationship can be created by contract or conduct, not all contracts create agency relationships and not all conduct creates agency relationships.")). There must also be control, the "essential ingredient" in the make-up of vicarious liability. *Jones*, 887 F.3d at 450. Rogers' allegation that Postmates "oversaw," "monitored," and "tracked" the "results" of the marketing campaign does not amount to an allegation that it "controlled" Bird Dog in executing that campaign. Postmates and Bird Dog were in a commercial relationship; the former was paying the latter for its marketing services. It is only natural that Postmates would want to keep an eye on the marketing campaign results to know whether it was paying off; that doesn't mean it was directing things. (If Rogers believed Postmates was, he could have alleged that.)

    *Naiman* is instructive here. There, the plaintiff alleged he had received a call from a telemarketer which violated the TCPA. 2017 WL 5992123. The plaintiff alleged that the defendant had hired the telemarketer, a third-party, to act as its agent in marketing its payment

services. He alleged that the defendant "had control over [the third-party's] actions on its behalf," "limited the types of business [the telemarketer] could solicit," "restricted the geography within which [the telemarketer] could promote [the defendant's business]," "decided whether . . . it would accept a customer from [the telemarketer]," "instructed [the telemarketer] with respect to the volume of calling," and "had day-to-day control over [the telemarketer's] actions." *Id.* at *11. The court found these allegations, which the plaintiff asserted showed that defendant had control over the telemarketer's actions on its behalf, were insufficient to demonstrate that the plaintiff had "'had control over'" the telemarketer's actions and thus were insufficient to demonstrate a plausible claim for relief based on vicarious liability. *Id.* The court reasoned that the allegations, "without any facts showing how [defendant] did those things or how it knew those things, or what facts the allegations are based on — are not facts that allow the court to draw the reasonable inference that [defendant] is vicariously liable for [the telemarketer's] alleged misconduct." *Id.*; *see also id.* ("plaintiff does not point to any <u>facts</u> that support the conclusory allegations") (emphasis in original). Here, Rogers similarly has not alleged any facts that support the inference that Postmates exercised any control over Bird Dog or Bird Dog's marketing campaign. Yet Rogers complaint is even more lacking: he doesn't even make the conclusory allegation of control.

Furthermore, even if Rogers had alleged that Postmates exercised some degree of control over Bird Dog, to state a plausible claim based on actual authority, a plaintiff must also allege facts showing that the defendant had the right to control "the manner and means of the calls [] made. *Id.* at *10 (citing *Thomas*, 582 Fed. Appx 678, 679-80); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) (no vicarious liability where plaintiff failed to show defendant "controlled the manner and means by which the text message was created and distributed"). Rogers has not alleged that Postmates controlled the manner and means by which Bird Dog sent the text; he makes no allegation that Postmates was involved at all in Bird Dog's preparation and transmission of the text or any other communication.

Rogers argues in opposition that "the Complaint specifically alleges that [Postmates] acted with express actual authority over Bird Dog." Opp'n at 4. He cites to paragraphs 12 and 13 of the SAC, *see* Opp'n at 4-5, but neither of those allegations speaks to any authority Postmates

exercised over Bird Dog:

> 12. In an effort to advertise its delivery service and encourage Plaintiff and the other members of the putative Class to sign-up to become a part of its driver network to provide food deliveries, Defendant contracted with Bird Dog[], one of its marketing agents, to promote its mobile application and driver opportunities to as many individuals as possible.
>
> 13. As part of these efforts, Bird Dog blasted several thousands if not millions of automated text messages encouraging individuals to sign up for Defendant's delivery-driver network.

Neither is of any consequence Rogers' allegation that, "[i]n sending the automated text messages at issue[], Bird Dog was at all times acting on behalf of [Postmates] and solely for [Postmates'] benefit pursuant to a marketing campaign." Opp'n a 5 (quoting SAC ¶ 20). To the extent Rogers means to allege that Bird Dog was acting on Postmates' behalf as an agent, that allegation is conclusory and unsupported by factual allegations, and is entitled to no weight. To the extent Rogers alleges that Bird Dog acted "solely for" Postmates' benefit, that shows nothing more than that Bird Dog was doing the job which Postmates purportedly hired it to do. But again, "[a]n allegation of a beneficial contractual relationship alone is insufficient to establish agency." *Trenz,* 2015 U.S. Dist. LEXIS 180811, at *6; *see also Warciak v. Subway Restaurants, Inc*., 949 F.3d 354, 357 (7th Cir. 2020) (rejecting claim that a commercial contractual relationship between two businesses is tantamount to an agency relationship sufficient to plead vicarious liability under the TCPA).

Rogers points to *Abante Rooter* in his Opposition. 2020 WL 1876240. There, one of two co-defendants moved for dismissal on the ground that it was the wrong party to be sued for a TCPA violation. The court decided that the plaintiff had "plausibly alleged a basis for holding" that the defendant was liable for the TCPA claims in the complaint. *Id.* at * 1-2. There, however, the plaintiff had expressly alleged that the two defendants, similarly named ("First Standard Financial Company, LLC" and "First Standard Finance Company, LLC"), were "affiliates, owned and operated as a joint enterprise."[1] *Id.* at *2. That sort of allegation carries more weight because

---

[1] The complaint in that case also alleged that defendants were both New York financial services companies with the same address registered with the New York Secretary of State. *See* No. 18-

9

mutual control is an element essential to a joint venture. *Shell Oil Co. v. Prestidge*, 249 F.2d 413, 415 (9th Cir. 1957) ("Thus a contract between the parties, a common purpose, a community of interest, mutual control over the subject matter of the enterprise or over the property engaged therein, have been held to be elements necessary to the existence of a joint venture."). By contrast, Rogers alleges that Postmates contracted with Bird Dog for Bird Dog to conduct its marketing.

Because Rogers fails to allege that Postmates controlled Bird Dog or the manner and means in which Bird Dog allegedly transmitted the unlawful text, he fails to plausibly allege that Bird Dog was acting as Postmates' agent. Thus, he has not plausibly alleged that Bird Dog had actual authority.

### 2. Apparent Authority

"Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *Iron Workers*, 124 F.3d at 1099 (citing *NLRB v. Donkin's Inn,* 532 F.2d 138, 141 (9th Cir. 1976), *cert. denied,* 429 U.S. 895 (1976)).

Rogers argues that the SAC plausibly alleges liability based on apparent authority because it alleges that the text Bird Dog sent to him referenced Postmates by name, *see* SAC ¶ 14, and that the link provided in the text message directed the visitor to Postmates' webpage, *see id.* ¶¶ 16-18. But "[a]pparent authority 'must be established by proof of something said or done by the principal on which a third party reasonably relied'; it 'cannot be established merely by showing that the purported agent claimed authority or purported to exercise it.'" *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *4 (N.D. Cal. Oct. 16, 2019) (quoting *Iron Workers*, 124 F.3d at 1099). Apparent authority here would need to be established by alleging that *Postmates* said or did something upon which Rogers relied. But Rogers "does not [plausibly] allege that he 'reasonably relied, much less to his detriment, on any apparent authority with which [Postmates] allegedly cloaked' [Bird Dog], the entity responsible for creating and sending the text messages." *Linlor v. Five9, Inc.*, 2017 WL

---

CV-05003-JD, Dkt No. 40, ¶¶ 5-8.

2972447, at *4 (S.D. Cal. July 12, 2017) (quoting *Thomas*, 582 Fed. Appx. at 679-80). Thus, the "principal's manifestations" are lacking.

Rogers returns to the argument he made in opposition to the last motion to dismiss, that the link in Bird Dog's text and URL demonstrated that Bird Dog had access to the Postmates "information and systems." The FCC has found that "apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information." *In re DISH Network, LLC*, 28 FCC Rcd 6574, 6592. Rogers disagrees with the Court's finding in the last order that "the fact that the link in the text directed to the Postmates website [is not] proof that the sender had access to Postmates' 'information and systems.'" ECF No. 33 at 7. Rogers asserts that "the only way someone could have been taken to" the specific URL alleged in the SAC "was by clicking the link in the text message, and the only person who was sent that text message was Plaintiff." Opp'n at 8. Indeed, that appears to be the case. But that fact does not mean that Bird Dog has access to unique and detailed information. Rogers seems to conclude that because the URL contained campaign parameters tacked on to a destination URL for a publicly-available Postmates' webpage, Postmates either added the parameters itself or the parameters necessarily consisted of some information that "normally would be within the [Postmates'] exclusive control." But the first proposition is not alleged and is not reasonably inferable from what is alleged, and the second – also not alleged – is implausible. The destination page in the URL is a public page on Postmates' website; anybody can navigate to it. Source, medium, campaign, and term parameters can then be added to the destination URL by anyone, and no special information is required to do so. The parameters here could just as easily have been added to the destination URL by Bird Dog, and Rogers has not plausibly alleged that Postmates had any control in preparing the texts, and indeed to the contrary has alleged that Postmates hired Bird Dog to conduct the marketing campaign. Rogers fails to explain how any of the information in the parameters "would need to be retrieved from [Postmates'] systems," Opp'n at 9, as it is all information which Bird Dog could have assigned itself (e.g., Bird Dog could have assigned for

11

1   utm_source, "birddogmedia"). Rogers also fails to explain how the utm_term, which is simply a

2   numeric value, indicates access to Postmates' systems and information[2]; Bird Dog could have

3   assigned unique numeric values for each individual to whom it sent a text.

4       The SAC does not allege facts plausibly suggesting Bird Dog acted with apparent

5   authority.

6       **3.     Ratification**

7       Ratification is "'the affirmance of a prior act done by another, whereby the act is given

8   effect as if done by an agent acting with actual authority.'" *Kristensen v. Credit Payment Servs.*

9   *Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (quoting Restatement § 4.01(1)). It "may create an

10  agency relationship when none existed before if the acts are done by an actor . . . who is not an

11  agent but pretends to be." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1074 (9th

12  Cir. 2019) (citation and quotation marks omitted).

> "Ratification does not occur unless . . . the act is ratifiable as stated in § 4.03." *Id.* § 4.01(3)(a). An act is ratifiable "if the actor acted or purported to act as an agent on the person's behalf." *Id.* § 4.03. Therefore, "[w]hen an actor is not an agent and does not purport to be one," the doctrine of ratification does not apply. *Id.* § 4.03 cmt. b.

16  *Kristensen*, 879 F.3d at 1014. There are two ways a principal might ratify a third party's acts: by a

17  "knowing acceptance of the benefit" or through "willful ignorance." *Henderson*, 918 F.3d at

18  1073-74 (citing Restatement § 4.01 cmt. d). To prove knowing acceptance, there must be "an

19  objectively or externally observable indication . . . that the principal has exercised choice and has

20  consented" to the acts of the purported agent. Restatement § 4.01 cmt. d. Consenting to the act

21  requires the principal have "knowledge of material facts," or "actual knowledge." Restatement §

22  4.06. A principal that is "willfully ignorant" might not know the material facts, but ratifies "with

23  awareness that such knowledge was lacking." Restatement § 4.01 cmt. b. "In effect, the principal

---

[2] Rogers argues that "Bird Dog [] must have had access to Postmates' 'information and systems' to obtain the code that correlated specifically to Plaintiff on Postmates' system (in order to then insert that code into the pertinent part of the postmates.com URL that Plaintiff would be directed to if he clicked the link)." It is not entirely clear whether Rogers means to argue that the utm_term values came from Postmates' systems, but even if that were the case, the SAC does not allege that Bird Dog obtained any information from Postmates that was used in the URL or in the marketing campaign more generally.

can ratify the act of a third party—thereby making the third party the principal's agent—even if it does not know all the material facts, but it must be aware that it does not know the material facts and ratify anyway." *Henderson*, 918 F.3d at 1074.

In arguing Postmates' ratification, Rogers argues that Postmates "has enjoyed the benefits of the marketing campaign performed by Bird Dog, fully aware that particular individuals were arriving at its website as a result of receiving the messages sent on its behalf by Bird Dog. Opp'n at 6 (quoting SAC ¶ 20 ("Defendant was aware, or should have been aware, that Bird Dog was sending such text messages on its behalf, and Defendant knowingly allowed and permitted Bird Dog to conduct such marketing at least until the time that Plaintiff filed this suit."); *id.* ¶ 17 ("Defendant was at all times made aware that individuals, including Plaintiff and the other members of the Class, were directed to its website and its services pursuant to this marketing campaign and as a result of text messages sent by Bird Dog on its behalf"). Even if that is true, for ratification purposes Rogers must plausibly allege that Postmates knew or should have known that Bird Dog was referring people through texts in violation of the TCPA for liability to attach under the TCPA. *See Kristensen*, 879 F.3d at 1015 ("Although AC Referral was an agent of Click Media, Kristensen presented no evidence that Click Media had actual knowledge that AC Referral was sending text messages in violation of TCPA."); *id.* (knowledge that an agent is engaged is a "commonplace marketing activity" like text messaging not enough for ratification). Rogers does not make even the conclusory allegation that Postmates knew that that Bird Dog was sending such text messages on its behalf *in violation of the TCPA*. He does not allege that Postmates knew that Bird Dog had not obtained consent from Rogers to send the text. Thus, Rogers' "knowing acceptance" argument is unpersuasive.

*Kristensen* is fatal to Rogers' "willful ignorance" argument. While trying to argue ratification, the plaintiff there pointed out that a defendant's contract with a publisher stated that the publisher could use text message marketing and required the publisher to comply with the TCPA. According to the plaintiff, "this was sufficient to trigger [the defendant's] duty to investigate whether [the publisher] was acting in compliance with law." *Id.* at 1015. The Ninth Circuit disagreed. It held that "[t]he knowledge that an agent is engaged in an otherwise

13

commonplace marketing activity is not the sort of red flag that would lead a reasonable person to investigate whether the agent was engaging in unlawful activities." *Id.* It concluded that because the defendant had no "knowledge of facts that would have led a reasonable person to investigate further," it could not be deemed to have ratified the publisher's actions and therefore was not vicariously liable. Here, Rogers has only alleged that Postmates was aware that Bird Dog was "sending [] text messages on its behalf." He has not alleged any other "red flags" which would have led a reasonable person to investigate whether Bird Dog was violating the TCPA. Hence, Rogers does not allege facts plausibly suggesting that Postmates ratified Bird Dog's sending of texts in violation of the TCPA.

### 4. Leave to Amend

Postmates argues that the Court may deny leave to amend for Rogers' repeated failure to cure deficiencies, futility of amendment, and bad faith. A court may exercise discretion to deny leave to amend due to any of those reasons. Rogers makes no argument concerning whether leave to amend is appropriate should his SAC be dismissed. The SAC is Rogers' third attempt before this Court at plausibly pleading that Postmates and not some other party was liable for the alleged violation of the TCPA.[3] Postmates raised the issues of vicarious liability and control in its motion to dismiss the original complaint. *See* Dkt No. 14 at 7-8. And in its order dismissing the First Amended Complaint ("FAC"), the Court made it abundantly clear that, in order to plausibly allege that Postmates was vicariously liable for the text, Rogers had to allege that Postmates had some degree of control over who sent the text and the manner and means by which it was sent. Rogers has not alleged that, despite the Court's clear direction. He has also not pleaded facts plausibly suggesting that Postmates exercised any direction over the content of the text or the manner and means by which it was sent. This was Rogers' third attempt to get it right, but he was unable to. The Court is left with the impression that amendment would be futile. Accordingly, the Court will

---

[3] Plaintiff originally filed this putative class action against Postmates in the United States District Court for the Southern District of Florida on July 25, 2019. Case No. 0:19-cv-61877-CMA. On September 6, 2019, he voluntarily dismissed that complaint after the Eleventh Circuit issued a ruling that the receipt of a single text message constituted nothing more than "a brief, inconsequential annoyance" insufficient to convey Article III standing for a TCPA claim. MTD at 2-3 (quoting *Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019)).

exercise its discretion and dismiss without leave to amend.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss.  The SAC is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: July 9, 2020

THOMAS S. HIXSON
United States Magistrate Judge

15